**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
**Syracuse Division**

FRANZ KRUEGER,
WILLIAM KRUEGER

             Plaintiffs,

          vs.

BARRINGTON RESIDENTIAL, INC,
ELM HILL ESTATES, LLC,
KAYLA HOLBROOK

            Defendants.

Civil Action No.: __5:26-CV-1175__ (GTS/ML)

**COMPLAINT**

**JURY TRIAL DEMANDED**

### Nature of the Action

1.     Plaintiffs Franz Krueger and William Krueger (collectively, "Plaintiffs") bring this action against Defendants Barrington Residential Inc., Elm Hill Estates, LLC, and Kayla Holbrook (collectively, "Defendants"), for housing discrimination based on disability in violation of the federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, and the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*

2.     Plaintiffs seek declaratory, injunctive, and monetary relief against Defendants for constructively denying Plaintiff Franz Krueger's disability-related reasonable accommodation requests for an assigned parking space close to his apartment, which was necessary for Plaintiffs to fully use and enjoy their apartment.

3.     Defendants constructively denied Plaintiff Franz Krueger's reasonable accommodation request by designating a reserved parking space in name only while refusing to enforce its exclusivity. Despite repeated notice that unauthorized vehicles routinely occupied the space,

Defendants declined to take reasonable enforcement measures, including towing the vehicles, and instead improperly shifted the burden to Plaintiffs to enforce the parking rules by contacting law enforcement and directly confronting the owners of the offending vehicles themselves. This pattern of inaction rendered the accommodation ineffective, deprived Plaintiffs of the equal use and enjoyment of their dwelling, and constitutes a constructive denial of Plaintiff's accommodation request in violation of 42 U.S.C. § 3604(f)(3)(B).

4.      Defendants further exacerbated the problem by encouraging and condoning the behavior of maintenance staff, tenants, and guests without disabilities who improperly utilized accessible parking and Plaintiff's assigned parking space, including actively thwarting police enforcement of accessible parking violations. These efforts by Defendants constitute unlawful interference with Plaintiffs' fair housing rights under 42 U.S.C. § 3617.

## Jurisdiction and Venue

5.      This Court has subject matter jurisdiction over this matter under 42 U.S.C. § 3613, 28 U.S.C. § 1331, and 28 U.S.C. § 1343(a)(3).

6.      This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367 because those claims are related to Plaintiffs' federal law claims and arise out of a common nucleus of facts. Plaintiffs' state law claims are related to Plaintiffs' federal claims such that those claims form part of the same case or controversy under Article III of the United States Constitution.

7.      This Court has authority to grant the requested declaratory and injunctive relief against Defendants under 28 U.S.C. §§ 2201 and 2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure.

8.    Venue is proper in the Northern District of New York under 28 U.S.C. § 1391(b) because the property that is the subject of this action is located in this district, and all relevant events giving rise to the claims in this action occurred in this district.

## PARTIES

9.    Plaintiff Franz Krueger is an individual with disabilities, including mobility impairments, who lived at Elm Hill Estates, located at 100 Eagle Lane, Camillus, New York 13031, from March 2022 through April 2025.

10.    Plaintiff William Krueger is Franz Krueger's husband and resided with him at Elm Hill Estates during the entirety of his tenancy. William assists Franz with his disability-related needs on a daily basis.

11.    Defendant Barrington Residential, Inc. is an active domestic business corporation located at 3375 Brighton Henrietta Town Line Road, Rochester, New York 14623. Upon information and belief, Barrington Residential Inc. manages the Elm Hill Estates rental property.

12.    Defendant Elm Hill Estates, LLC is an active domestic limited liability company located at 3375 Brighton Henrietta Town Line Road, Rochester, New York 14623. Upon information and belief, Elm Hill Estates LLC owns the Elm Hill Estates rental property.

13.    Defendant Kayla Holbrook was the property manager at Elm Hill Estates during the Plaintiffs' tenancy. Upon information and belief, Defendant Holbrook is employed by and is an agent of Defendant Barrington Residential, Inc. and/or Defendant Elm Hill Estates, LLC.

## STATEMENT OF FACTS

14.    Plaintiffs Franz Krueger and William Krueger moved into Elm Hill Estates in March 2022. At the time that their lease commenced, Franz's legal name was Franz Asbury.

15.     Franz and William were married on April 27, 2024 and Franz legally changed his name to Franz Krueger.

16.     Upon information and belief, Elm Hill Estates is an apartment complex with approximately 200 units in the form of apartments and townhouses spread across approximately fifteen buildings.

17.     Plaintiffs lived in building 1600, which has approximately ten apartment units.

18.     Plaintiffs consistently paid their rent in full and on time throughout their tenancy at Elm Hill Estates.

19.     Franz was formally diagnosed with several disabilities, including mobility impairments, on or about July 28, 2023.

20.     Franz's disabilities have led to chronic pain, poor blood circulation in his extremities, disk degeneration, and hyper-mobile joints. Due to his disabilities, he is injury-prone, has difficulty walking, and has poor balance that causes him to fall when walking moderate distances without assistance from others. These conditions worsen in the winter months due to the cold temperatures.

21.     Franz's mobility impairments were noticeable to the average observer during his tenancy at Elm Hill Estates, as he often walked with a limp and utilized a cane at that time.

22.     When Plaintiffs began their tenancy, there were approximately seventeen parking spaces in front of their apartment building, four of which were designated as accessible parking near the building entrance.

23.     From his diagnosis in July 2023 through the remainder of his tenancy at Elm Hill Estates terminating on April 30, 2025, Franz required the use of an accessible parking space in front of his apartment building to enable him to safely walk from his vehicle to his apartment without

significant difficulty. However, other individuals without disabilities, including tenants, visitors, and maintenance staff, frequently parked in the accessible spaces near the entrance to the building, making it impossible for Franz to park there consistently.

24. On September 18, 2023, Franz notified Defendants by email at eh@barringtonresidential.com that tenants without accessible parking placards for their vehicles and maintenance staff members were frequently parking in the accessible parking spaces in front of the apartment building. He explained that he required the use of one of the accessible spaces due to his disability and that he was awaiting paperwork from his doctor to obtain an accessible parking placard. Franz also mentioned that he occasionally has guests who require an accessible parking space when visiting his apartment. He asked that management take action to address the improper use of the designated accessible parking spaces by individuals without disabilities. Defendants did not respond to this initial email.

25. On September 21, 2023, Franz sent another email to management providing a picture of a vehicle improperly parked in an accessible space and identified the vehicle's owner by their apartment number.

26. Later that day, Defendant Kayla Holbrook responded from the eh@barringtonresidential.com email address that she would "address this today."

27. On Friday, September 22, 2023, Defendant Holbrook stated via email that she had spoken with the tenant who had improperly parked in the accessible space and asked that Franz "keep [her] posted if [the car] is not moved shortly and/or over the weekend."

28. Franz emailed Defendant Holbrook back the following day and informed her that the car had not been moved and was still improperly parked in the accessible space. Ms. Holbrook did not respond.

29.     On November 15, 2023, Franz notified Defendants by email that he received an accessible parking permit for his vehicle and had begun utilizing a specific accessible space in front of his building by attaching stickers identifying his apartment number to the sign to claim the spot for his apartment. He explained that he believed it was necessary to claim the space because other residents and their guests were still parking in the generally available accessible spaces despite his pleas to management to prevent unauthorized use of those spaces. He provided the license plate of the vehicle that most frequently was improperly parked in an accessible space. He offered to provide any additional paperwork that management required from him. Defendants did not respond.

30.     On December 1, 2023, Franz emailed Defendants and identified two specific license plates that were continually parking improperly in the accessible parking spaces in front of his building. He asked if management could speak with those individuals because, "[n]ot only is it illegal, it is frustrating as a disabled person who is struggling to use my legs because of a disease, seeing people just treating it like it's a convenience when people do use the spots." He explained that he had reached the point where he felt contacting the police for assistance would become necessary because the issue was not being addressed by management and he was not always aware of who owned the vehicles.

31.     After no email response from Defendants, Franz contacted the police regarding the unlawfully parked vehicles on December 3, 2023. He notified Defendants of his call to the police and explained that the offending vehicle was parked in such a way that he was unable to park in an accessible space. He again provided the license plate number of the offending vehicle. Defendants again failed to respond or address the issue.

32. The unlawful parking of vehicles in accessible spaces continued throughout 2024. However, Plaintiffs ceased contacting management for much of that time due to their lack of responsiveness to prior communications from Plaintiffs.

33. In the summer of 2024, Plaintiffs verbally notified Defendant Holbrook that maintenance staff was also improperly parking in the accessible spaces when at their building. Defendant Holbrook allegedly spoke with maintenance staff about this issue, but staff continued to park there when performing work at the building.

34. In December 2024, Franz arrived home and found two maintenance staff members parked in the accessible parking space. When they saw Franz pulling up in his vehicle, they started laughing and Franz heard one of them say, "I told you he would be pissed about it!" as if his need for an accessible space was a joke to them.

35. Later in December 2024, Plaintiffs needed to address a maintenance issue in their apartment. They made a request to management and asked that management call them to let them know when maintenance staff would be arriving. They had previously made a similar request in the past and maintenance had notified them in advance of their expected time of arrival.

36. On December 19, 2024, William Krueger emailed management notifying them that maintenance vehicles were still improperly parking in the accessible parking spaces and, despite management purportedly speaking with maintenance staff about this problem, they continued to park in those spots. He suggested that residents who see maintenance staff improperly parking there take it as a "go ahead" from staff to follow suit. There was no response to this email from Defendants.

37. In January 2025, maintenance staff members arrived at Plaintiffs' apartment without prior notice to address the maintenance issue Plaintiffs had requested be fixed the previous month.

Upon their arrival, the maintenance staff banged on the apartment door loudly and then let themselves into the apartment. Franz was home alone at the time, and they informed him that they were there to address the maintenance issue from December. Due to his disabilities, Franz was physically unable to get up from where he was sitting and escort them through the apartment. The staff instead went into Plaintiffs' bedroom unaccompanied and moved several items while performing the maintenance work without first notifying Franz that they were going to do so.

38. Upon completion, the staff member informed Franz that maintenance work is going to cost fifty dollars starting today unless Franz gives the apartment complex a 5-star Google review. The actions and behavior of the maintenance staff members made Franz feel uncomfortable, coerced, and harassed due to his disability-related requests. Upon information and belief, the lack of notice prior to arrival, the on-site behavior by maintenance staff, and the attempts to charge Franz for the maintenance work were in retaliation for his complaints to management regarding maintenance staff parking in accessible spaces.

39. In January 2025, Plaintiffs were again forced to contact the police to address the unlawful parking by tenants and their guests and immediately notified management that they had done so. Prior to the police arriving at the property, however, Defendants hurriedly removed all but one of the accessible parking signs to thwart efforts by the police to issue violation tickets to the offenders.

40. Franz spoke with Defendant Holbrook shortly after the incident. During the phone call, Ms. Holbrook told Franz that she had instructed her maintenance crew to remove three of the four accessible parking signs, effectively hiding the identity of the vehicle owners who had parked illegally. She stated that she advised non-disabled tenants that they could park in the

8

accessible spaces because Franz was the only disabled tenant in the building, illustrating that she not only failed to address the problem of the individuals improperly parking there, but indeed encouraged the behavior.

41.   During the call, Defendant Holbrook dismissively stated to Franz, "You've got to understand that [the other tenants] pay rent to use the same parking you do."

42.   Franz raised concerns about the removal of accessible parking signs because he has a guest who requires an accessible parking space when they visit. Defendant Holbrook responded by asserting "we don't accommodate the public, only the people living here" and suggested his visitors "find other accommodations."

43.   After Franz voiced his additional concern that the police were not always able to address the parking problem, Defendant Holbrook suggested, "well, instead of calling the cops, why don't you try talking to your neighbors and asking them not to park there or to move their car?" Franz explained that due to his mobility issues, he could not park in an inaccessible spot and then go up several flights of stairs to knock on doors and ask people to move their cars. Ms. Holbrook's response was: "Well, just try asking when you see them next or find some other way."

44.   On January 21, 2025, Franz notified Defendants by email that he was still having issues with parking, specifically identified his disabilities, and reiterated his corresponding need for an accessible parking space to ensure his safety.

45.   Franz further explained that because of maintenance staff removing the other accessible spaces, disabled guests of residents were now parking in his assigned space at a higher rate because it was the sole remaining accessible space.

46.    Later the following day, on January 22, 2025, Defendant Holbrook responded to the email stating that Defendants "are currently reviewing the availability of additional spaces and exploring potential solutions" and "[o]nce the weather changes, we hope to add additional accessible spaces to our parking lot. In the meantime, we can label the parking space in front of building 1600 with your designated unit number."

47.    Defendants never added additional parking spaces to the parking lot.

48.    Franz immediately responded that his space was already labeled with his unit number as he had previously informed them and that the apartment designation had not dissuaded other individuals from parking in that space.

49.    On January 23, 2025, Ms. Holbrook replied by email after having "a conversation with our team to discuss the best approach to this." Defendants' intended solution as she described it was to send out a weekly email to residents detailing the community rules regarding the accessible parking and to purchase "residents only" signs to attach to the post of each accessible spot.

50.    Franz Krueger thanked Ms. Holbrook for the response by email and explained: "It has been very scary that I have been put in multiple situations where I could have been seriously injured, and in situations where I have to argue with neighbors because the complex took away the additional parking spaces without notifying anyone of the changes, leaving it on me to enforce them."

51.    A January 22, 2025 email was purportedly sent by management to all residents asking tenants who do not require accessible parking spaces to "avoid using these designated spots to allow for easier access to those who need them" and advised that violators will be subject to towing at the owner's expense.

52.    On January 23, 2025, a second email was purportedly sent by management to all residents reminding tenants that the accessible spaces were "specifically designed for residents who require accessible parking" and should not be used by guests.

53.    The two emails purportedly sent from management to all residents did not reduce the frequency of individuals improperly parking in Franz's assigned parking space and residents and their visitors continued parking there unabated.

54.    On February 2, 2025, William Krueger emailed Defendants to inform them of a negative interaction Plaintiffs had experienced with a neighbor's guest who had improperly parked in the accessible parking space despite not having a disability placard for their car. In the email he notified Defendants that when Plaintiffs informed the guest that the parking was for disabled residents only, the guest began screaming at them and used homophobic slurs and suggested Franz Krueger "kill himself." She also threatened to vandalize their car the next time she was there.

55.    William continued the email to management by asking that they follow through on their previous statements that they would reinstate the additional accessible parking spaces that they had removed in January and to indicate on the signs that their policy was that the spaces were for residents only. He also asked what towing company service management uses and inquired into why Plaintiffs were forced to call the police every time there was an issue.

56.    William concluded the email by explaining: "We are doing everything we can; and [management] should do more than just [send] passive emails considering the enforcement has fallen on my shoulders more often than not. I worry enough about my husband being safe getting into his house. Now we're getting harassed in our own home because of a basic request."

57. Defendants never responded to the February 2, 2025 email and, upon information and belief, did not adequately address the harassment described in the email. The visitor continued to act in a hostile manner towards Plaintiffs.

58. William sent Defendants another email on February 6, 2025 thanking management for posting the "residents only" sign on the sole accessible parking space. He noted that the parking violations usually take place in the evening and asked what they should do if someone parks there when the office is closed. He asked for the towing company's number in the hopes that Plaintiffs could contact the towing company directly to avoid overreliance on management and the police. He also asked what management planned to do regarding the harassment described in the February 2nd email. He concluded by asking Defendants to please address their concerns.

59. Defendants never responded to the February 6, 2025 email.

60. After not receiving a response from Defendants, William spoke with maintenance staff regarding the issues described in the February emails. They stated that they would ask Ms. Holbrook to respond. She did not.

61. On March 11, 2025, William emailed Defendants once again, explaining his discussion with maintenance and noting that the individual who had harassed them was still making them uncomfortable and continually tried to provoke a negative response from them whenever she saw them at the property. He expressed his concern that management's lack of response either means they are neglecting emails that involve tenant safety concerns or that they are intentionally choosing not to respond. He asked if management was purposefully ignoring him.

62. Later that day, William Krueger spoke with Defendant Holbrook by phone. He memorialized the conversation in a second email on March 11, 2025 and again asked that he be

provided the towing company's contact information so that he can contact them regarding parking violations after hours rather than being constrained to calling the police.

63. William also raised concerns with Ms. Holbrook's proposed solution that they continue contacting the police instead of having management directly address the violations. He also expressed his confusion with this proposed solution given that Ms. Holbrook had previously told Franz Krueger that she was "sorry people didn't get ticketed like you wanted," and that Ms. Holbrook had previously advised other residents that it was in fact okay for them to park in the accessible parking spaces because Franz was the only disabled person in the building. William also raised concerns regarding the events in January when the maintenance team had removed the accessible parking signs upon learning that Plaintiffs had contacted the police to ensure no one faced any consequences for improperly parking there.

64. For the first time since January, Ms. Holbrook finally responded to William Krueger's emails. On March 11, 2025, Ms. Holbrook first informed William that she had addressed the February 2, 2025 incident within twenty-four hours of receiving the email from Plaintiffs. The actions she claims to have taken consisted of allowing the other party to describe their involvement and provide "their take on the incident" and to review the community rules with the tenant who invited the guest. No written violation was issued nor other corrective action taken.

65. Ms. Holbrook informed William that he lacks the authority to tow a vehicle or to enforce the removal of vehicles from an accessible parking space, and that such matters must be handled by the police, the property owner, or the owner's authorized agents. She reiterated that she has "always advised the involvement of the Camillus PD after hours" and that "[d]uring business hours, the towing of a vehicle is to be enforced at our discretion."

66.     Ms. Holbrook continued the email explaining that the accessible signs in front of the building were removed "after an audit was conducted for the accessibility needs of your building" and that the "superfluous signs were only complicating the parking situation."

67.     The issue of unauthorized vehicles parking in the accessible parking space identified for Plaintiffs' sole use, continued for the remainder of Plaintiffs' tenancy.

68.     Upon information and belief, despite being repeatedly informed of numerous parking violations over the span of months, including repeat offenders, Defendants never towed a vehicle that was improperly parked in an accessible space.

69.     Despite Plaintiffs providing multiple notifications to Defendants regarding individuals repeatedly parking in Franz Krueger's assigned space both before and after the January 22nd email was purportedly sent to residents, Defendant Holbrook stated that management "felt the email [to all residents describing the parking rules in January 2025] was effective."

70.     The police expressed frustration to Plaintiffs that management was not enforcing their own parking rules on private property.

71.     Defendants' unwillingness to effectively enforce the parking rules resulted in Franz Krueger being forced on multiple occasions to either park in a parking space further from his apartment and risk injury or to wait in his vehicle until an accessible space became available. When William was unavailable to assist him, he was constrained to choose the latter, which at times caused him to wait in his vehicle for over an hour. When William was available to assist, William would often have to physically carry Franz to their apartment to prevent injury.

72.     On one of the occasions when Plaintiffs contacted the police to enforce the accessible parking requirements, they notified management that they had done so. Shortly after, Plaintiffs witnessed maintenance staff running upstairs to knock on tenants' doors to provide them with the

opportunity to move their cars before the police arrived, in an effort to prevent proper enforcement.

73.     Franz fell at least four times during instances when he had to park further from his apartment. He still has discomfort in one of his knees as a result.

74.     When Franz had to park further from his apartment during the winter months, the additional time in the cold weather would exacerbate the symptoms of his disability while he attempted the longer walk to his apartment.

75.     Plaintiffs estimate that whenever they left their apartment, they were able to find an adequate parking space upon their return less than 50% of the time. If they returned in the evenings or during the weekends, finding an adequate parking space was even rarer.

76.     Due to the uncertainty that they would be able to find a parking space upon their return, Plaintiffs often chose not to leave their apartment at all, causing them to miss social events with friends and family.

77.     Defendants' refusal to adequately enforce their parking rules and the improper use of Plaintiffs' assigned parking space by others, compelled Plaintiffs to vacate their apartment and move to a different location in April 2025.

78.     Plaintiffs provided notice to Defendants of their intent not to renew their lease and vacated prior to the end of their lease on April 30, 2025.

79.     As a result of this move, they needed to burn through their savings to pay for moving expenses, a security deposit, and to pay a higher monthly rent for their new apartment.

80.     The apartment they moved to was not one of their top choices, but due to the time-sensitive nature of their apartment search, they were forced to settle for that option. Their current living situation has more stairs to navigate and is further away from Plaintiffs' family members.

81. The location of their current apartment is in a less desirable neighborhood in the City of Syracuse instead of their preferred location in Camillus.

82. As a result of the increase in rent at their new apartment, Plaintiffs have been unable to keep up with their finances. Rather than renew their lease and risk an eviction for falling behind in rent in the future, they intend to move back in with family. This will cause a decrease in their independence and will likely cause strain with their family members.

83. Plaintiffs have both sought therapy to help address the emotional toll Defendants' unlawful conduct had on their daily lives while living at Elm Hill Estates.

84. Plaintiffs no longer trust housing providers to adequately accommodate Franz Krueger's disabilities in good faith, and they are wary of even attempting to live in apartment complexes in the future.

85. Plaintiffs report experiencing severe stress and anxiety, anger, humiliation, a feeling of being unsafe in their home, and a distrust for others because of their experiences at Elm Hill Estates.

86. Plaintiffs assert that Defendants' actions and comments were degrading and dismissive of Franz Krueger's disability-related needs.

87. The increased stress resulting from Defendants' failure to address Franz's disability-related needs and their discriminatory conduct towards Plaintiffs exacerbated the symptoms of his disabilities.

88. Defendants' insistence that Plaintiffs must enforce the parking rules themselves by calling the police if the accessible parking spaces were occupied by unauthorized cars after business hours antagonized their neighbors against them, which likely would not have occurred had management taken responsibility for enforcing the parking rules.

89.     In acting or omitting to act as alleged herein, Defendants Barrington Residential, Inc. and Elm Hill Estates, LLC were acting through their employees and/or agents and are liable based on the actions and inactions of their employees and/or agents.

90.     In acting or omitting to act as alleged herein, each employee or agent of Defendants Barrington Residential, Inc. and Elm Hill Estates, LLC, including Defendant Kayla Holbrook and maintenance staff members, was acting within the course and scope of their actual or apparent authority pursuant to such agencies.

91.     Upon information and belief, Defendants Barrington Residential, Inc. and Elm Hill Estates, LLC had knowledge of the discriminatory acts or omissions of each employee or officer as agent, including the discriminatory policies they were implementing, and subsequently ignored, approved, condoned, ratified, adopted, and/or acquiesced in that conduct as principal.

92.     Defendants' discriminatory conduct and statements towards Plaintiffs based on Plaintiff Franz Krueger's disability were intentional, willful, and/or carried out with a reckless disregard for Plaintiffs' federally protected rights, thereby warranting punishment and deterrence in the form of punitive damages.

## CAUSES OF ACTION

93.     Plaintiffs re-allege and incorporate by reference all allegations set forth in the paragraphs above.

### Count I: Violation of the Fair Housing Act of 1968, as amended
### 42 U.S.C. § 3601 *et seq.*

94.     Defendants' refusal to properly assign, effectuate, and enforce a specific parking space to Plaintiff Franz Krueger as a reasonable accommodation to his disabilities had the purpose and effect of discriminating against him based on his disability in violation of 42 U.S.C. § 3604(f)(2) and (3).

95.     Defendants' failure to enforce parking rules in deliberate disregard of Plaintiff Franz Krueger's disability-related needs, and their failure to adequately engage in a good faith, interactive process with Plaintiffs to address those needs – independently and taken together – have the purpose and effect of discriminating on the basis of disability, in violation of 42 U.S.C. § 3604(f)(2) and (3).

96.     Defendants' refusal to enforce the proper use of generally accessible parking spaces solely by individuals with disabilities, and Defendants' reduction of the number of accessible parking spaces near Plaintiffs' apartment building constitute discrimination against Plaintiffs in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services of facilities in connection with such dwelling because of disability, in violation of 42 U.S.C. § 3604(f)(2) and (3).

97.     Defendants' conduct as described above resulted in a constructive eviction and made housing unavailable to Plaintiffs because of Plaintiff Franz Krueger's disability in violation of 42 U.S.C. § 3604(f)(1).

98.     Defendants' conduct as described above constitutes the making of statements with respect to the rental of a dwelling that indicate a preference, limitation, or discrimination based on disability, in violation of 42 U.S.C. § 3604(c).

99.     Defendants' conduct as described above constitutes coercion, intimidation, threats, or interference with Plaintiffs' exercise and enjoyment of rights granted under the Fair Housing Act—namely, the use of an assigned parking space provided as a reasonable accommodation for disability—by failing to enforce the exclusivity of that accommodation despite knowledge of ongoing violations by other tenants, their guests, and maintenance staff, and by actively prohibiting parking enforcement by the police, in violation of 42 U.S.C. § 3617.

100.    As a result of Defendants' discriminatory conduct, Plaintiffs have suffered damages and are both aggrieved persons, as defined in 42 U.S.C. § 3602(i).

### Count II: Violation of the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq.

101.    Plaintiffs re-allege and incorporate by reference all allegations set forth in the paragraphs above.

102.    The Defendants' actions described herein constitute a denial or withholding of a housing accommodation from Plaintiffs because of Plaintiff Franz Krueger's disability in violation of New York State Executive Law § 296(5)(a)(1).

103.    Defendants, through their actions described herein, have discriminated against Plaintiffs in the terms, conditions, or privileges of a rental, and in the furnishing of services connected therewith, because of Plaintiff Franz Kruger's disability in violation of New York State Executive Law § 296(5)(a)(2).

104.    The Defendants' actions described herein constitute the making of a statement or inquiry, with respect to the lease of a dwelling, which indicates a preference, limitation and/or discrimination based on disability in violation of New York State Executive Law § 296(5)(a)(3).

105.    The Defendants' actions described herein constitute a refusal to accommodate Plaintiff Franz Krueger's disabilities in violation of New York State Executive Law § 296(18)(2).

### PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, Plaintiffs pray that this Court grants judgment in their favor, and against Defendants, as follows:

(a)     Declaring that Defendants' actions violate the federal Fair Housing Act, 42 U.S.C. § 3601 et seq., and the New York State Human Rights Law, N.Y. Exec. Law § 296 et seq.;

(b)     Permanently enjoining Defendants from engaging in the conduct described herein and directing Defendants to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent additional instances of such conduct or similar conduct from occurring in the future;

(c)     Awarding Plaintiffs compensatory damages in an amount that would fully compensate them for the financial and emotional injuries caused by Defendants;

(d)     Awarding Plaintiffs punitive damages in an amount that would effectively punish and deter similar conduct by Defendants and similar actors in the future;

(e)     Awarding Plaintiffs reasonable attorney's fees and costs pursuant to 42 U.S.C. § 3613(c)(2); and

(f)     Awarding Plaintiffs other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all issues triable as of right.

Dated:   6/3/26

s/ Conor Kirchner
Conor J. Kirchner (Bar #518898)
CNY Fair Housing, Inc.
731 James Street, Suite 200
Syracuse, New York 13203
Phone: (315) 471-0420
Fax: (315) 471-0549
Email: ckirchner@cnyfairhousing.org
*Attorney for Plaintiffs*

20